**Electronically Filed
Supreme Court
SCWC-17-0000419
25-NOV-2019
09:36 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

BROK CARLTON, Petitioner/Defendant-Appellant.

SCWC-17-0000419

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000419; CASE NO. 2PC131000254(1))

NOVEMBER 25, 2019

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

This case raises the issue of whether Hawai'i Rules of Penal Procedure (HRPP) Rule 48(b)(3) (2000) applies when the State on remand is given the option of either (a) retrying the defendant on the charges underlying three convictions vacated by the appellate court or (b) dismissing two of those charges and having the circuit court reinstate the conviction on the

remaining charge and resentence the defendant. We also consider whether the State's failure to disclose which two of the three charges would be dismissed before the defendant exercised the right of allocution at sentencing rendered the allocution constitutionally inadequate.

For the reasons discussed below, we hold that HRPP Rule 48(b)(3) is applicable to the circumstances of this case, although the six-month period did not expire because the commencement date of the time period under this rule is the effective date of the judgment on appeal. We further hold that the State's failure to identify which charges would be dismissed prior to the defendant's sentencing allocution violated the due process clause under article I, section 5, of the Constitution of the State of Hawai'i. Lastly, we reaffirm that sound judicial administration instructs that the defendant be given the last word before sentence is imposed.

## I.  BACKGROUND

### A. Circuit Court Proceedings

On February 14, 2014, Brok Carlton was found guilty after a jury trial in the Circuit Court of the Second Circuit (circuit court) of kidnapping as a class A felony, in violation of Hawai'i Revised Statutes (HRS) § 707-720(1)(d) (1993); robbery in the first degree, in violation of HRS § 708-840(1)(a) (1993 & Supp. 2006); assault in the second degree, in violation of HRS

§ 707-711(1)(d) (1993 & Supp. 2007); and unauthorized control of a propelled vehicle (UCPV), in violation of HRS § 708-836 (1993 & Supp. 2001). On June 6, 2014, the circuit court sentenced Carlton to twenty years imprisonment for the kidnapping and robbery charges and five years imprisonment for the assault and UCPV charges, with all counts to run consecutively for a total of fifty years of imprisonment.[1] Carlton appealed the judgment to the Intermediate Court of Appeals (ICA) on the grounds that the jury was not properly instructed on the law of merger for the kidnapping, robbery, and assault offenses. The ICA agreed that the circuit court erred, pursuant to HRS § 701-109(1)(e),[2] by not instructing the jury regarding the possible merger of these offenses. The ICA affirmed the circuit court's sentence as to the UCPV conviction, but vacated the convictions for kidnapping, robbery, and assault.

The ICA ordered the State on remand to retry Carlton

---

[1] The Honorable Judge Rhonda I. L. Loo presided over the trial and on the remand proceedings.

[2] HRS § 701-109(1)(e) (1993) states as follows:

> When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. The defendant may not, however, be convicted of more than one offense if: . . . . (e) The offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of conduct constitute separate offenses.

on the kidnapping, robbery, and assault charges with appropriate merger instructions provided to the jury or to dismiss two of the three counts and have the circuit court reinstate the conviction and resentence Carlton on the non-dismissed count. The Judgment on Appeal was entered on June 27, 2016.

The State took no action until a hearing was held in the circuit court on January 11, 2017, when the State, for the first time, indicated that it was electing to dismiss two of the three counts and would proceed with resentencing on the remaining count. The State did not inform Carlton or defense counsel which counts would be dismissed and which count would be reinstated. Instead, all of the counts were scheduled for resentencing at a later date.

On January 17, 2017, Carlton filed a motion to dismiss the three counts on the basis that HRPP Rule 48(b)(3) had been violated because more than six months had elapsed between the entry of the ICA's Judgment on Appeal on June 27, 2016, and the date of the State's election on January 11, 2017.[3]  In

---

[3]     HRPP Rule 48(b)(3) states as follows:

> Except in the case of traffic offenses that are not punishable by imprisonment, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months . . . (3) from the date of mistrial, order granting a new trial or remand, in cases where such events require a new trial.

opposition, the State argued that, by its plain language, HRPP Rule 48(b)(3) did not apply because a new trial was not required by the ICA's decision, which allowed the State to elect between a new trial and resentencing. A hearing on the motion was held on February 1, 2017, in which the circuit court denied the motion, stating that HRPP Rule 48(b)(3) "only applies to cases where such events require a new trial. In this case, a new trial is not going to be the solution. I understand the State's going to go with re-sentencing."

At the resentencing hearing on April 28, 2017, the circuit court asked defense counsel to proceed first with counsel's sentencing argument. Defense counsel stated that Carlton had maintained good behavior during his years in custody and that the court should consider Carlton's post-conviction conduct as a sentencing factor. After counsel finished, the court asked Carlton if he had anything to say. Carlton apologized for his actions and requested leniency. The State then proceeded with its argument, focusing on the sentencing factors under HRS § 706-606.[4] The State argued that the court

---

[4]     HRS § 706-606 (1993) states the following:

The court, in determining the particular sentence to be imposed, shall consider:
(1) The nature and circumstances of the offense and the history and characteristics of the defendant;
(2) The need for the sentence imposed:

(continued. . .)

5

should not consider Carlton's conduct while he was in custody and asked the court to impose consecutive sentences because of the planning and premeditation involved. The State argued that because Carlton had to recruit accomplices, gather various tools, and travel over an hour in order to carry out the crime, consecutive terms were necessary.

At the end of its argument, for the first time, the State disclosed its decision to ask the circuit court to sentence Carlton on the robbery charge and to dismiss the kidnapping and assault charges. Carlton's counsel asked the court if the defense could respond, and the court allowed defense counsel to do so. Carlton's counsel maintained that the court could consider Carlton's conduct while in custody and should particularly consider his completion of all the classes available to him while he was incarcerated. After Carlton's

---

(. . . continued)

> (a) To reflect the seriousness of the offense, to promote
> respect for law, and to provide just punishment for the
> offense;
> (b) To afford adequate deterrence to criminal conduct;
> (c) To protect the public from further crimes of the
> defendant; and
> (d) To provide the defendant with needed educational or
> vocational training, medical care, or other correctional
> treatment in the most effective manner;
> (3) The kinds of sentences available; and
> (4) The need to avoid unwarranted sentence disparities
> among defendants with similar records who have been found
> guilty of similar conduct.

counsel responded, the court summarized the facts of the case and considered the sentencing factors under HRS § 706-606. The court did not address Carlton after the State's election, nor did it afford him an opportunity to address the court once he had been informed of the conviction on which he would be resentenced.

The circuit court then sentenced Carlton to twenty years imprisonment on the robbery offense and ordered that the twenty-year term for the robbery offense and the five-year term for the UCPV offense run consecutively for a total of twenty-five years. The court's Amended Judgment; Conviction and Sentence; Notice of Entry was filed on April 28, 2017 (circuit court judgment). Carlton timely appealed on May 15, 2017.

### B. ICA Proceedings

In a Summary Disposition Order,[5] the ICA agreed with the State's contention, first raised on appeal, that the clock for HRPP Rule 48 did not begin to run in this case until July 28, 2016, when the judgment on appeal became effective pursuant to Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 36(c)(1).[6]

---

[5] The ICA's summary disposition order can be found at State v. Carlton, No. CAAP-17-0000419, 2019 WL 2462827 (June 13, 2019).

[6] HRAP Rule 36(c)(1) (2016) states in relevant part as follows: "The intermediate court of appeals' judgment is effective as follows: (1) if no application for writ of certiorari is filed, (A) upon the thirty-first day after entry . . . ."

The ICA concluded that Carlton's argument failed because the State made its election before six months had run from when the judgment on appeal became effective, even assuming that HRPP Rule 48 applies to a remand that allows the State to elect between a new trial and resentencing.

The ICA also found that Carlton's right of allocution was not violated because Carlton was aware that the State had not elected the specific counts for dismissal and did not object at the resentencing hearing. The ICA stated that Carlton's counsel could have requested that Carlton be allowed to speak again, but he did not. On this basis, the ICA found that the issue was waived.

Despite the finding of waiver, the ICA went on to conclude that the circuit court did not violate Carlton's right of allocution by asking Carlton to make a statement before knowing for which charge he was to be sentenced. Carlton was aware of the evidentiary basis of each charge, the ICA stated, so the fact that he did not know which charges would be dismissed could not demonstrate a lack of notice as to the charges themselves or the evidentiary bases for them. "Thus," the ICA stated, "Carlton received adequate notice of the facts at issue in resentencing." Accordingly, the ICA concluded that Carlton received notice and the opportunity to be heard, and therefore his right of allocution as provided by the right to

due process was not violated.

## II.   STANDARDS OF REVIEW

"When interpreting rules promulgated by the court, principles of statutory construction apply."  State v. Lau, 78 Hawai'i 54, 58, 890 P.2d 291, 295 (1995).  "Interpretation of a statute is a question of law which we review de novo."  Id. "Therefore, interpretation of HRPP Rule 48 is a question of law reviewable de novo."  Id.

"We review questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case."  State v. Phua, 135 Hawai'i 504, 511-12, 353 P.3d 1046, 1053-54 (2015).  Therefore, we review questions of constitutional law under the right/wrong standard.  Id.

## III.   DISCUSSION

### A. Interpretation of HRPP Rule 48(b)(3)

#### 1. HRPP Rule 48(b)(3) Applies to Cases On Remand in which the State May Elect Between a New Trial and Resentencing

"HRPP Rule 48 operates to 'ensure an accused a speedy trial' and to further 'policy considerations to relieve congestion in the trial court, to promptly process all cases reaching the courts, and to advance the efficiency of the criminal justice process.'"  State v. Fukuoka, 141 Hawai'i 48, 62-63, 404 P.3d 314, 328-329 (2017) (quoting State v. Estencion, 63 Haw. 264, 268, 625 P.2d 1040, 1043 (1981)).  This rule "was

9

adopted in part to ensure the speedy, efficient resolution of cases in which a person is charged with a criminal offense and is subject to a possible term of imprisonment." State v. Lau, 78 Hawaiʻi 54, 60, 890 P.2d 291, 297 (1995). HRPP Rule 48's purpose is underpinned by the principle that "[u]nreasonable delay in the determination of criminal action subverts the public good and disgraces the administration of justice." Estencion, 63 Haw. at 268, 625 P.2d at 1043.

At issue in this case is whether HRPP Rule 48(b)(3) applies when the State is instructed to elect on remand a new trial on vacated convictions or reinstatement and resentencing of a vacated count or counts. HRPP Rule 48(b)(3) states in relevant part as follows:

> [T]he court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months . . . (3) from the date of mistrial, order granting a new trial or remand, in cases where such events require a new trial.

The circuit court, in considering HRPP Rule 48(b)(3), stated that the rule only applies when a new trial is required on remand. The court found that a new trial was not required in this case because the State was given the option of seeking resentencing instead of retrying Carlton on the vacated counts.

Since HRPP Rule 48(b)(3) is a rule promulgated by the court, principles of statutory construction apply. Lau, 78 Hawaiʻi at 58, 890 P.2d at 295 (employing principles of statutory

10

construction to interpret the applicability of HRPP Rule 48).

This court's construction of statutes is guided by well-settled

principles.  See State v. Choy Foo, 142 Hawaiʻi 65, 72, 414 P.3d

117, 124 (2018); State v. Wheeler, 121 Hawaiʻi 383, 390, 219 P.3d

1170, 1177 (2009).  We first examine the language of the statute

itself.  Choy Foo, 142 Hawaiʻi at 72, 414 P.3d at 124.  If the

language is plain and unambiguous, we must give effect to its

plain and obvious meaning.  Id.  Also, implicit in statutory

construction is our foremost obligation to ascertain and give

effect to the intention of the legislature, which is obtained

primarily from the language of the statute itself.  Id.

Finally, when there is doubt, doubleness of meaning, or

indistinctiveness or uncertainty of an expression used in a

statute, an ambiguity exists.  Id.  When there is ambiguity, the

meaning of ambiguous words may be sought by examining the

context or resorting to extrinsic aids to determine legislative

intent.  Citizens Against Reckless Dev. v. Zoning Bd. of

Appeals, 114 Hawaiʻi 184, 194, 159 P.3d 143, 153 (2007).

        Applying these statutory principles to our

construction of HRPP Rule 48(b)(3) must therefore begin "with an

examination of the plain language" of the rule.  State v. King,

139 Hawaiʻi 249, 253, 386 P.3d 886, 890 (2016).  The language of

HRPP Rule 48(b)(3) indicates that it applies "in cases where

such events require a new trial." In this case, the ICA held in the first appeal that the failure of the circuit court to provide merger instructions required that Carlton be given a new trial unless the State voluntarily dismissed two of the three counts. The State counters that no new trial is required because it is empowered to elect a non-trial option. While this is correct, it is also true that the ICA required a new trial unless the State dismissed two of the three counts against Carlton. Thus, under its plain language, HRPP Rule 48(b)(3) appears applicable as the ICA's "order grant[ed] a new trial" in a situation "where such events require a new trial." The fact that the new trial could be avoided by the State if it dismissed two counts does not substantively change the ICA disposition that a new trial was required unless the State followed specific steps to avoid this mandate.

However, even assuming an ambiguity in the language of the rule, "this court's foremost obligation in [rule] interpretation is to effectuate the [rule's] purpose." State v. Tsujimura, 140 Hawai'i 299, 307, 400 P.3d 500, 508 (2017). Our interpretation of HRPP Rule 48(b)(3), therefore, must effectuate the purpose of the rule to ensure an accused a speedy trial, relieve congestion in the trial court, promptly process all cases reaching the courts, and advance the efficiency of the criminal justice process. Fukuoka, 141 Hawai'i at 62-63, 404

12

P.3d at 328-29. If HRPP Rule 48(b)(3) did not apply in cases when the State may elect between a new trial and resentencing, the State would be able to delay retrying the defendant beyond the six-month period provided by the rule. Indeed, the time period for the State to delay its election would extend without limitation and would only be circumscribed when the delay was deemed to violate the constitutional right to a speedy trial, a very high hurdle to demonstrate. Thus, to hold that HRPP Rule 48(b)(3) applies only in situations when a new trial is required, and not when the State may elect between new trial and resentencing, would undermine the purposes of HRPP Rule 48 to ensure prompt processing of all cases and advance the efficiency of the criminal justice process.

Further, "it is well settled that this court may depart from a plain reading of a [rule] where a literal interpretation would lead to absurd and/or unjust results." Morgan v. Planning Dep't, 104 Hawai'i 173, 185, 86 P.3d 982, 994 (2004) (quoting Iddings v. Mee-Lee, 82 Hawai'i 1, 15, 919 P.2d 263, 277 (1986)). To read HRPP Rule 48(b)(3) as applying only when the appellate disposition requires a new trial as the sole option would, as discussed above, lead to results that are illogical and unjust in light of HRPP Rule 48's purposes of ensuring a defendant a speedy trial and advancing the efficiency of the criminal justice process. See Estencion, 63 Haw. at 268,

625 P.2d at 1043.

Accordingly, we hold that HRPP Rule 48(b)(3) applies to cases when the State may on remand elect between a new trial and resentencing.

### 2. The HRPP Rule 48(b)(3) Clock Begins to Run when the Judgment of the Appellate Court Becomes Effective

Also at issue in this case is whether the clock for HRPP Rule 48(b)(3) begins to run once the appellate court files its judgment on appeal or when the judgment of the appellate court becomes effective.  HRAP Rule 36(c)(1) provides that, when no application for writ of certiorari is filed, the judgment is effective "(A) upon the thirty-first day after entry or (B) where the time for filing an application for a writ of certiorari is extended in accordance with Rule 40.1(a) of these Rules, upon the expiration of the extension."  The Commentary to HRAP Rule 36 states as follows:

> See Rule 41 and its commentary ("the intermediate court of appeals' judgment cannot be effective and jurisdiction cannot revert to the court or agency from which appeal was taken until the time for filing the application has expired or, if an application is filed, the supreme court has rejected or dismissed the application or affirmed the intermediate court of appeals' judgment in whole.")

(Emphases added.)[7]  As explained by the Commentary to HRAP Rule

---

[7]    The Commentary to HRAP Rule 41 (2012) states as follows:

Effective for intermediate court of appeals' judgments on appeal and orders of dismissal entered on or after January 1, 2012, a party has 30 days to file an application for a writ of

(continued. . .)

36, the court from which appeal was taken does not reacquire jurisdiction over the matter until the judgment becomes effective.

Thus, until the judgment on appeal becomes effective, the lower court does not have the power to exercise authority over a case in order to schedule further proceedings. Since trial cannot be scheduled until the judgment on appeal becomes effective, the clock for HRPP Rule 48(b)(3) only begins to run once the judgment of the appellate court becomes effective. This interpretation is also necessitated by the fact that, in cases when this court accepts the application for certiorari and then affirms the judgment of the ICA in whole under HRAP Rule 36(c)(2)(B),[8] the ICA's judgment on appeal does not become

---

(. . . continued)

> certiorari, which can be extended for no more than an additional 30 days upon the filing of a written request for extension in accordance with HRAP Rule 40.1(a). The time for filing the application is measured from the date the intermediate court of appeals' judgment on appeal or order of dismissal was filed. Thus, the intermediate court of appeals' judgment cannot be effective and jurisdiction cannot revert to the court or agency from which appeal was taken until the time for filing the application has expired or, if an application is filed, the supreme court has rejected or dismissed the application or affirmed the intermediate court of appeals' judgment in whole.

> The supreme court's judgment on appeal is not subject to further state review and is effective upon entry.

[8] HRAP Rule 36(c)(2)(B) (2016) states as follows: "The intermediate court of appeals' judgment is effective as follows: . . . (2) if an application for writ of certiorari is filed, . . . (B) upon entry of the

(continued. . .)

effective until entry of an order or other disposition by this court.  See HRAP Rule 36(c)(2)(B).  Under these circumstances, the effective date of the judgment would generally be more than six months from the date the judgment was filed by the ICA, and thus under Carlton's interpretation the clock for HRPP Rule 48(b)(3) would expire while the ICA decision is pending review in this court.

Based on the plain meaning of HRPP Rule 48(b)(3), as well as the rule's purposes of ensuring an accused a speedy trial, relieving congestion in the trial court, promptly processing all cases reaching the courts, and advancing the efficiency of the criminal justice process, we hold that the clock for HRPP Rule 48(b)(3) begins to run when the judgment of the ICA becomes effective.

Applying this holding to this case, the judgment on appeal in the first appeal was entered on June 27, 2016, and no application for writ of certiorari or request for extension of time for filing an application was filed.  Therefore, under HRAP Rule 36(c)(1)(A), the judgment on appeal was effective upon the thirty-first day after entry, or July 28, 2016.  This made the HRPP Rule 48 deadline January 24, 2017.  See State v. Jackson,

_____

(. . . continued)

supreme court's order or other disposition affirming in whole the judgment of the intermediate court of appeals."

81 Hawai'i 39, 50, 912 P.2d 71, 82 (1996) (stating that six months is construed as one hundred eighty days). The State elected not to seek retrial on January 11, 2017. Since this date was before the deadline of January 24, 2017, the ICA was correct when it concluded that the circuit court did not err by denying Carlton's January 17, 2017 motion to dismiss this case for violation of HRPP Rule 48(b)(3).

## B. Carlton's Right of Allocution

Carlton also contends that the circuit court's sentencing procedure violated his due process right of allocution by not affording him an opportunity to address the court after the State elected which charges would be dismissed and which charge Carlton would be resentenced on. "Allocution is the defendant's right to speak before sentence is imposed." State v. Hernandez, 143 Hawai'i 501, 509, 431 P.3d 1274, 1282 (2018) (internal quotations and alterations omitted). The right of presentence allocution is an important constitutional right guaranteed under the due process clause, article I, section 5, of the Constitution of the State of Hawai'i. Id. (citing State v. Davia, 87 Hawai'i 249, 255, 953 P.2d 1347, 1353 (1998)). The right is also protected by HRS § 706-604(1) (1993), which provides in full that, "Before imposing sentence, the court shall afford a fair opportunity to the defendant to be heard on

17

the issue of the defendant's disposition." HRPP Rule 32(a) similarly provides that the court, prior to imposing sentence, "shall address the defendant personally and afford a fair opportunity to the defendant and defendant's counsel, if any, to make a statement and present any information in mitigation of punishment."[9] The multiple layers of protection afforded to the defendant's right of allocution reflect the multiple important purposes it serves.

One "prime reason" for allocution is to provide the defendant an opportunity to plead for mitigation of the sentence. Hernandez, 143 Hawai'i at 511, 431 P.3d at 1284 (quoting State v. Carvalho, 90 Hawai'i 280, 286, 978 P.2d 718, 724 (1999)). Allocution also provides the defendant the opportunity to dispute the factual bases for sentencing and to meaningfully participate in the sentencing process. State v. Chow, 77 Hawai'i 241, 250, 883 P.2d 663, 672 (App. 1994). Beyond sentence mitigation, allocution is important because it allows the defendant to "acknowledge wrongful conduct, which is 'the

---

[9] HRPP Rule 32(a) (2012) states as follows:

> After adjudication of guilt, sentence shall be imposed without unreasonable delay. Pending sentence, the court may commit the defendant or continue or alter bail, subject to applicable provisions of law. Before suspending or imposing sentence, the court shall address the defendant personally and afford a fair opportunity to the defendant and defendant's counsel, if any, to make a statement and present any information in mitigation of punishment.

first step towards satisfying the sentencing objective of rehabilitation,'" and it may have a therapeutic effect on the defendant.  Hernandez, 143 Hawai'i at 511, 431 P.3d at 1284 (quoting Chow, 77 Hawai'i at 250, 883 P.2d at 672).  The defendant's public acknowledgement of wrongdoing may also have collateral benefits by deterring others from similar conduct and "purging . . . any felt need for retribution in a victim, a victim's family, or the community as a whole."  Chow, 77 Hawai'i at 250, 883 P.2d at 672.

### 1. Due Process Requires the Court to Afford the Defendant an Opportunity to be Heard Prior to Sentencing at a Meaningful Time and in a Meaningful Manner

It is the duty of the trial court to directly address the defendant and ensure the defendant's right of allocution is upheld.  See State v. Schaefer, 117 Hawai'i 490, 498, 184 P.3d 805, 813 (App. 2008) ("We know of no effective or adequate manner in which a defendant's right of presentence allocution may be constitutionally realized than to affirmatively require that the trial court make direct inquiry of the defendant's wish to address the court before sentence is imposed." (quoting Chow, 77 Hawai'i at 247, 883 P.2d at 669)).  This duty is also imposed on the trial court by the language of HRS § 706-604(1), which, as noted above, provides that "the court shall afford a fair opportunity to the defendant to be heard on the issue of the

defendant's disposition." (Emphasis added.) HRPP Rule 32(a) uses similar mandatory language, instructing that "before suspending or imposing sentence, <u>the court shall address the defendant personally</u>." (Emphasis added.)

As stated, the right of presentence allocution is an important constitutional right guaranteed under the due process clause of the Hawai'i Constitution. <u>Hernandez</u>, 143 Hawai'i at 509, 431 P.3d at 1282. We have observed that "procedural due process requires that a person have an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" <u>In re Application of Maui Elec. Co.</u>, 141 Hawai'i 249, 269, 408 P.3d 1, 21 (2017) (quoting <u>Freitas v. Admin. Dir. of Courts</u>, 108 Hawai'i 31, 44, 116 P.3d 673, 686 (2005)). As a due process right, a defendant's right of allocution is violated if the court fails to afford the defendant an opportunity to exercise the right at a meaningful time and in a meaningful manner. <u>See, e.g.</u>, <u>Carvalho</u>, 90 Hawai'i at 286, 978 P.2d at 724 (a sentencing court must afford a defendant the right of presentence allocution "<u>before</u> ruling on the applicability of the young adult defendants statute"). In order to be meaningful, the opportunity for allocution must be reasonably calculated to achieve its purposes of providing the defendant with an opportunity to plead for mitigation, contest the factual bases

for sentencing, and acknowledge wrongdoing.  See Chow, 77 Hawaiʻi at 250, 883 P.2d at 672.

In this case, the court provided Carlton the opportunity for allocution before the State specified which charges would be dismissed and which charge would be reinstated. Each of the potential charges, kidnapping, robbery, and assault, are predicated on different conduct and the elements of the offenses are not the same.  The robbery charge in particular involved conduct that was not encompassed by the kidnapping and assault charges.  Since Carlton did not know the offense he was to be sentenced on, he did not know which of his actions he needed to address and possibly provide explanation, mitigation, or take responsibility for.  Carlton was thus not afforded a meaningful opportunity to address the circumstances of the robbery offense because, at the time of his allocution, he did not know that this offense would provide the basis for the resentencing.  In essence, the court and the State put Carlton in the position of having to address three offenses although only one of them was to underlie the conviction in this case.

The ICA found that Carlton waived any objection to the court's violation of his due process right of allocution because, at the time of sentencing, Carlton was aware that the State had not elected the specific counts for dismissal and did not object at that time.  Although it is true that Carlton's

21

counsel could have requested that Carlton be allowed to speak again, it was the duty of the court, not Carlton's counsel, to afford Carlton a fair opportunity to be heard. See Grindling v. State, 144 Hawai'i 444, 452, 445 P.3d 25, 33 (2019) ("[A] trial court's constitutional duty to engage the defendant in a colloquy . . . does not devolve upon defense counsel when the court does not fulfill its responsibility."); HRS § 706-604(1); HRPP Rule 32(a). Therefore, Carlton's failure to object at his resentencing hearing did not constitute a waiver of his due process right of allocation.

As stated, in order to have a meaningful opportunity to exercise his right of allocution, Carlton needed to know the offense for which he would be sentenced before he made his statement to the court. It is the duty of the sentencing court to ensure a defendant's right of allocution can be exercised in an informed and knowing manner at the time the defendant addresses the court. We hold that by failing to afford Carlton an opportunity to make a statement after he was apprised of the offense for which he would be sentenced, the circuit court violated Carlton's right of allocution as guaranteed by the due process clause, article I, section 5, of the Constitution of the State of Hawai'i.

### 2. Allowing the Defendant the Last Word Before Sentence Is Imposed Is an Element of Sound Judicial Administration

In addition to being unable to address the offense of conviction, Carlton had no opportunity to controvert the State's sentencing argument or supplement the statements of defense counsel regarding his conduct while incarcerated.

The timing of the court's invitation to the defendant to speak regarding all factual matters presented to the court is unquestionably significant to the meaningfulness of the right of allocution. See, e.g., Carvalho, 90 Hawai'i at 286, 978 P.2d at 724. In Carvalho, the sentencing court did not afford Carvalho an opportunity to be heard before denying his request for sentencing as a young adult defendant. Id. We held that, by not providing Carvalho an opportunity to be heard before ruling on the applicability of the young adult sentencing statute, the sentencing court had denied Carvalho his right of allocution. We stated that the "right of allocution is designed to provide an opportunity to affect the totality of the trial court's sentencing determination." Id. at 286, 978 P.2d at 724.

Manifestly, the statements of counsel at a sentencing hearing that contain factual assertions can significantly impact the court's application of the sentencing factors set forth in HRS § 706-606. In this case, after Carlton addressed the court, both counsel made arguments about whether and to what extent the

court should consider Carlton's conduct while incarcerated, what level of premeditation was involved in the offense, and whether consecutive or concurrent sentences should be imposed. The court did not speak directly to Carlton after the arguments were completed. This omission denied Carlton an opportunity to affect the totality of the court's sentencing determination as Carlton was not able to controvert the statements made by the State about his asserted premeditation in the offense of conviction or supplement the statements of defense counsel regarding his conduct while incarcerated--matters on which Carlton may have been able to provide additional information to the court.

This ability to controvert, correct, or supplement factual representations made by counsel is similar to a defendant's right to controvert or supplement the presentence investigation report (PSI), as provided by HRS § 706-604(2) (Supp. 2006).[10] The statute requires the court to furnish the

_____

[10] HRS § 706-604(2) states the following:

> The court shall furnish to the defendant or the defendant's counsel and to the prosecuting attorney a copy of the report of any pre-sentence diagnosis or psychological, psychiatric, or other medical examination and afford fair opportunity, if the defendant or the prosecuting attorney so requests, to controvert or supplement them. The court shall amend or order the amendment of the report upon finding that any correction, modification, or addition is needed and, where appropriate, shall require the prompt preparation of an amended report in which material required

(continued. . .)

24

parties with a copy of the PSI and afford fair opportunity for the parties to controvert or supplement it.  State v. Phua, 135 Hawai'i 504, 517 n.21, 353 P.3d 1046, 1059 n.21 (2015).  This provision is designed to protect defendants from unfounded facts and derogatory information by requiring notice and an opportunity to controvert the information.  State v. Barrios, 139 Hawai'i 321, 331, 389 P.3d 916, 926 (2016).  This ensures that the court or other entity making a decision about a defendant's sentence be given, and relies upon, the most accurate information available.  The ability to controvert or supplement the PSI is particularly critical because of its many uses in the criminal justice process.  See generally, HRS § 806-73(b)(3) (Supp. 2005);[11] HRS § 706-604(4) (Supp. 2006).[12]

---

(. . . continued)

to be deleted is completely removed or other amendments, including additions, are made.

[11]   HRS § 806-73(b)(3) provides as follows:

(3) A copy of a presentence report or investigative report shall be provided only to:
(A) The persons or entities named in section 706-604;
(B) The Hawaii paroling authority;
(C) Any psychiatrist, psychologist, or other treatment practitioner who is treating the defendant pursuant to a court order or parole order for that treatment;
(D) The intake service centers;
(E) In accordance with applicable law, persons or entities doing research; and
(F) Any Hawaii state adult probation officer or adult probation officer of another state or federal jurisdiction who:

(continued. . .)

Like the PSI, the statements of counsel at the sentencing hearing may influence the court's sentencing determination. In order to ensure the defendant is afforded a meaningful opportunity to address all information before the court and to affect the totality of the trial court's sentencing determination, the defendant should be given the opportunity to make a statement to the court after both counsel have completed their sentencing arguments.[13] Failing to afford the defendant this opportunity undermines the defendant's ability to controvert or supplement factual assertions made during the proceeding. Additionally, the statements of counsel at the sentencing hearing have relevance beyond the initial sentencing determination because transcripts of sentencing hearings may be used in subsequent proceedings. See, e.g., De La Garza v.

---

(. . . continued)

> (i) Is engaged in the supervision of a defendant or
> offender convicted and sentenced in the courts of Hawaii;
> or
> (ii) Is engaged in the preparation of a report for a court
> regarding a defendant or offender convicted and sentenced
> in the courts of Hawaii[.]

[12]  HRS § 706-604(4) provides as follows: "If the defendant is sentenced to imprisonment, a copy of the report of any pre-sentence diagnosis or psychological, psychiatric, or other medical examination, which shall incorporate any amendments ordered by the court, shall be transmitted immediately to the department of public safety."

[13]  If other persons aside from counsel address the court at sentencing, this should occur prior to the defendant's allocution. See, e.g., HRS § 706-604(3) (2014 & Supp. 2016) ("[T]he court shall afford a fair opportunity to the victim to be heard on the issue of the defendant's disposition, before imposing sentence.").

State, 129 Hawai'i 429, 433, 302 P.3d 697, 701 (2013) (noting that the prosecutor referenced statements made at defendant's sentencing hearing at a minimum term hearing before the Hawai'i Paroling Authority (HPA)); State v. Garcia, 135 Hawai'i 361, 366, 351 P.3d 588, 593 (2015) (discussing how sentencing hearing transcripts can be presented to the HPA); State v. Fogel, 95 Hawai'i 398, 403, 23 P.3d 733, 738 (2001) (stating that the circuit court reviewed the transcript of the sentencing hearing when ruling upon defendant's motion to reconsider sentence).

We have stated that courts should, "as a matter of good judicial administration, unambiguously address themselves to the defendant providing a personal invitation to speak prior to sentencing." Phua, 135 Hawai'i at 517, 353 P.3d at 1059 (internal quotations omitted). This court, as well as the ICA, has indicated that the sentencing court should give the defendant an opportunity to speak just before sentence is imposed by stating that "[t]he right is one easily administered . . . by the following inquiry: 'Do you, . . . [(defendant's name)], have anything to say before I pass sentence?'" Id. (some alterations in original) (quoting Chow, 77 Hawai'i at 248, 883 P.2d at 670). It is noted, however, that due process does not necessarily demand that a defendant be given the last word in all circumstances. See, e.g., State v. Nicholson, 120 Hawai'i

480, 486, 210 P.3d 3, 9 (App. 2009) (affirming circuit court's refusal to allow defendant a second allocution after the court expressed disbelief in response to defendant's statement when imposing sentence). Nevertheless, prudential judicial administration instructs that the defendant be given the last word before sentencing is imposed in order to avoid eroding the meaningfulness of the defendant's right of allocution. Under the circumstances presented in this case, the failure to provide Carlton an opportunity to speak after counsel completed their arguments clearly impaired Carlton's ability to controvert or supplement the statements of counsel.

Given our holding that Carlton's due process right of allocution was violated by the court's failure to require timely disclosure of the offense for which he would be sentenced, it is unnecessary to determine whether the court's failure to provide Carlton the opportunity to controvert or supplement the statements of counsel also rose to the level of a due process, statutory, or rule violation that requires resentencing. However, we reiterate that sound judicial administration requires that the sentencing court afford the defendant an opportunity for allocution after the arguments of counsel are complete and before sentence is imposed. Phua, 135 Hawai'i at 517, 353 P.3d at 1059.

28

## IV.    CONCLUSION

Based on the foregoing, we vacate in part and affirm in part the ICA's Judgment on Appeal entered on July 11, 2019 (ICA judgment) and the circuit court judgment.  The sentence set forth in the circuit court judgment and affirmed by the ICA judgment are vacated, and the case is remanded to the circuit court for resentencing before a different judge.  We otherwise affirm the ICA judgment and the circuit court judgment for the reasons stated herein.

Richard D. Gronna
(Benjamin E. Lowenthal on the
opening brief)
for petitioner

Renee Ishikawa Delizo
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

