262 P.3d 245

Rosemarie A. JAYLO,
Respondent/Plaintiff–
Appellee,

v.

Aldo M. JAYLO, Petitioner/Defendant–
Appellant.

Rosemarie Aguirre Jaylo,
Respondent/Plaintiff–
Appellant,

v.

Aldo Macapal Jaylo,
Petitioner/Defendant–Appellee.

No. SCWC–27851.

Supreme Court of Hawai'i.

Sept. 27, 2011.

Robert M. Harris, for petitioner/defendant-appellant/appellee.

Steven J. Kim, for respondent/plaintiff-appellee/appellant.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, DUFFY, and McKENNA JJ.

Opinion of the Court by DUFFY, J.

Defendant–Appellant Aldo Macapal Jaylo (Father) presents this court with a case of first impression: whether Hawai'i Revised Statutes (HRS) section 580–47(a) authorized the family court to order educational support

for a disabled but competent child age 23 or older when the 2004 Family Court's Amended Child Support Guidelines (2004 Guidelines) established pursuant to HRS § 576D–7 provided that such support may be continued only until the child attains the age of 23. The family court answered this question "Yes".[1] We agree, for the reasons discussed herein.

## I. *BACKGROUND*

This case arose from the divorce between Father and Plaintiff–Appellee Rosemarie Aguirre Jaylo (Mother). The parties married in 1980 and had three children, including twin daughters born on April 14, 1980. One of the twins (Daughter) has been blind since birth, and it is her educational support which is at issue in this case. The parties were divorced in 1996 pursuant to the terms of the July 29, 1996 Decree Granting Absolute Divorce and Awarding Child Custody (Divorce Decree). The Divorce Decree awarded Mother full legal and physical custody over the minor children, and Father was ordered to pay child support until each of the children reached the age of 18, or graduated from high school, or discontinued high school, whichever occurred last. Father was additionally ordered to provide child support for each child as long as they continued post-high school education, until graduation, or until the child attained the age of 23, whichever occurred first.

### A. *Mother's Post–Decree Motion to Reestablish Child Support.*

On May 24, 2005, Mother filed a post-decree motion, which is the subject of this appeal. In her motion, Mother sought, *inter alia,* an order reestablishing educational support for the parties' Daughter, who was 25-years old at the time the motion was filed, and pursuing a college education. A trial was held on September 9, 2005. The family court made the following relevant findings of fact and conclusions of law:

### *FINDINGS OF FACT*

. . .

2. Pursuant to the [Divorce Decree], Father was obligated to pay child support for the parties' three minor children[.] . . .

3. Father's child support obligation set forth in the [Divorce Decree] was to continue uninterrupted so long as each child continues his education post high school on a full-time basis at an accredited college or university, or in a vocational or trade school and shall continue until each child's graduation or attainment at the age of 23 years, whichever event shall first occur.

. . .

6. The parties' daughter, [Daughter], was 25 years old at the time of the trial in this matter. [Daughter] is legally blind based on her absolute lack of light perception in both eyes.

7. [Daughter] completed her high school education at Washington State School for the Blind in the Spring of 2000 [at the age of twenty].

8. [Daughter] entered a six-month program funded by the Washington State Department of Services for the Blind, the purpose of which was to assist blind students such as her to learn to live independently.

9. After completing the foregoing program in July 2001, [Daughter] pursued her college education by enrolling at Edmonds College in Lynnwood, Washington. . . .

10. [Daughter] then transferred to Seattle Central Community College in Seattle, Washington. . . .

. . .

17. [Daughter] . . . has an uncovered need of $834.00 per month, which in the past has been paid by Mother.

. . .

21. Mother and Father's combined monthly gross income is $9,773.00 per month, of which 37% is attributable to Mother, and 63% is attributable to Father.

### *CONCLUSIONS OF LAW*

. . .

23. Hawai'i Revised Statutes Section 577–7(a) provides, in pertinent part, that "[a]ll parents and guardians shall provide, to the

---

1. The Honorable Karen M. Radius presided.

best of their abilities, for the discipline, support, and education of their children."

24. Hawai'i Revised Statutes Section 580–47(a) provides with respect to child support that [the] "[p]rovision may be made for the support, maintenance, and education of an adult or minor child and for the support, maintenance, and education of an incompetent adult child whether or not the petition is made before or after the child has attained the age of majority."

25. In addition to the foregoing, the Court has continuing jurisdiction over the issues of child support and the children's post high school, higher educational expenses, as such continuing jurisdiction was specifically reserved in the [Divorce Decree].

26. Applying the gross incomes of the parties to the applicable child support guidelines, Father's child support obligation would be $660.00 per month, and Mother's child support obligation would be $390.00 per month. However, this Court concludes that [Daughter's] receipt of her own income of $625.00 per month is an exceptional circumstance warranting deviation from the parties' child support obligation under the child support guidelines.

27. Accordingly, the Court concludes that [Daughter's] current reasonable monthly need is $834.00 per month, and that good cause exists to require Father to be responsible to pay 63% ($525.42 per month) and Mother to be responsible to pay 37% (308.58 per month), based on their proportionate incomes . . . .

28. Mother's and Father's obligations to pay child support for [Daughter] shall remain in full force and effect for a limited time, so long as [Daughter] is pursuing a bachelor's degree and continuing at the maximum amount of courses prescribed by her college, taking into account her disability.

On March 6, 2006, the family court entered an order granting in part Mother's post-decree motion insofar as it reestablished educational support for Daughter. Father filed a notice of appeal on March 31, 2006.

B. *Appeal to the Intermediate Court of Appeals (ICA).*

Father filed his opening brief to the ICA on January 10, 2007, and argued, *inter alia,* that the family court's conclusions of law were incorrect because the family court "does not have continuing jurisdiction or legal authority to order child support for an adult child, over the age of 23 who is not incompetent." The ICA concluded that the 2004 Guidelines did not categorically prohibit the award of educational support to an adult child beyond the age of 23. 124 Hawai'i 488, 502, 248 P.3d 1219, 1233. The ICA stated that although the 2004 Guidelines permitted educational support for an adult child enrolled as a full-time student until that child attained the age of 23, the Guidelines further recognized that the presence of "exceptional circumstances" could justify the family court's deviation from the age cap and order support for adult children over the age of 23. *Id.* at 502, 248 P.3d at 1233. The ICA stated that it

[does] not read the 2004 Guidelines to allow for the greater expenses of a disabled child younger than twenty-three but to forbid support to the same child because he or she could not, because of their disability, complete their education within the standard four years. *We therefore hold that the family court could find that an adult child's physical disability constitutes exceptional circumstances resulting in a child support award to that disabled adult child beyond the age of twenty-three.*

. . .

However, on this record, it is unclear that the family court considered Daughter's disability an exceptional circumstance that excused application of the twenty-three year-old age limit.

*Id.* at 503, 504, 248 P.3d at 1234, 1235 (emphasis added). Thus, the ICA concluded that where there is a finding of "exceptional circumstances," the family court has the authority to order a parent to provide educational support for his or her child who is beyond the age of 23. The ICA remanded for: (1) findings on the issue of whether Mother has proved "exceptional circumstances" warranting deviation from the age limit on support

for an adult child beyond the age of 23 and, if so, (2) the amount and duration of support.

Father's Application for Writ of Certiorari was granted on July 8, 2011. Oral argument was held on September 1, 2011.

## II. STANDARDS OF REVIEW

### A. Statutory Interpretation

■ Questions of statutory interpretation are questions of law reviewed de novo. In our review of questions of statutory interpretation, this court follows certain well-established principles, as follows:

First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

State v. Silver, 125 Hawai'i 1, 4, 249 P.3d 1141, 1144 (2011)(internal citations and quotation marks omitted)(quoting Haw. Gov't Employees Ass'n, AFSCME Local 152, AFL–CIO v. Lingle, 124 Hawai'i 197, 202, 239 P.3d 1, 6 (2010)).

### B. Family Court's Findings of Fact and Conclusions of Law

■ Generally, the family court possesses wide discretion in making its decisions, and these decisions will not be set aside unless there is a manifest abuse of discretion. Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006).

The family court's [findings of fact] are reviewed on appeal under the "clearly erroneous" standard. A [finding of fact] is erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

On the other hand, the family court's [conclusions of law] are reviewed on appeal de novo, under the right/wrong standard. [Conclusions of law], consequently, are not binding upon an appellate court and are freely reviewable for their correctness.

Id.

## III. DISCUSSION

### A. HRS Section 580–47(a) Authorizes the Family Court to Order Educational Support for a Disabled But Competent Child Age 23 or Older.

■ HRS § 580–47(a) gives the family court broad authority to make "just and equitable" orders compelling a parent "to provide for the support, maintenance, and education of the children of the parties."

§ 580–47 Support orders; division of property. (a) Upon granting a divorce, or thereafter if, in addition to the powers granted in subsections (c) and (d), jurisdiction of those matters is reserved under the decree by agreement of both parties or by order of court after finding that good cause exists, the court may make any further orders as shall appear just and equitable (1) compelling the parties or either of them to provide for the support, maintenance, and education of the children of the parties [.]

HRS § 580–47(a) (2006). The statutory language of HRS § 580–47(a) does not contain any age limit on the family court's broad authority to make "just and equitable" orders compelling a parent to provide educational support for his/her child. Father acknowledges the absence of such a statutory age limitation, but bases his argument for the age limitation of 23 on four primary grounds:

(1) ICA case law, (2) the 2004 Guidelines, (3) the legislative history of amendments to HRS § 580–47, and (4) the legislature's failure to act in response to the ICA case law shows that the legislature tacitly approved the ICA decisions, giving them the effect of legislation. We will discuss each of these arguments in turn.

## B. *ICA Case Law*

Father cites footnote 3 in *Nabarrete v. Nabarrete,* 86 Hawai'i 368, 949 P.2d 208 (App.1997):

> 3. An adult-student-son/daughter is defined as a son or daughter who is under age 23 and attending college or another post-high school educational institution on a full time basis. *Mack v. Mack,* 7 Haw. App. 171, 180, 749 P.2d 478, 483 (1988).

*Nabarrete,* 86 Hawai'i at 371 n. 3, 949 P.2d at 211 n. 3. There is no discussion in *Nabarrete* regarding HRS § 580–47(a).

With respect to the *Mack* case, cited in footnote 3 in *Nabarrete* as the source of the age limitation of 23 for educational support, HRS § 580–47 is mentioned but there is no discussion regarding the source of the age 23 limitation on educational support:

> In his answering brief father states in relevant part as follows: "[T]he support duty owed by Husband to Laura and Danielle is far different from the duty owed to them when they were minors." We disagree. *Under HRS § 580–47 (1985)* and the May 13, 1982 consent decree of divorce, the duty owed by Father to Laura and Danielle since they became adults and while they are *under age 23* and attending college or another post-high school educational institution on a full time basis is basically the same as it was when they were minors. (Emphasis added).

*Mack,* 7 Haw.App. at 180, 749 P.2d at 483. The cited ICA case law is not persuasive as it does not inform us of the source of the purported age limitation of 23 for educational support, and is contrary to the broad discretion given the family court in HRS § 580–47(a).

## C. *2004 Guidelines*

Section E of the 2004 Guidelines expressly states, *inter alia:* "Support for an adult child who is a full-time student may continue until the child attains the age of 23."

The origin of the 2004 Guidelines is found in HRS § 580–47(a):

> *In establishing the amounts of child support,* the court shall use the guidelines established under section 576D–7. Provision may be made for the support, maintenance, and education of an adult or minor child and for the support, maintenance, and education of an incompetent adult child whether or not the petition is made before or after the child has attained the age of majority.

HRS § 580–47(a) (2006) (emphasis added).

HRS § 576D–7 is entitled "Guidelines in establishing *amount* of child support" and provides as follows:

> (a) The family court, in consultation with the agency, shall establish guidelines to establish the *amount* of child support when an order for support is sought or being modified under this chapter. The guidelines shall be based on specific descriptive and numeric criteria and result in a computation of the support obligation.
>
> The guidelines may include consideration of the following:
>
> (1) All earnings, income, and resources of both parents; provided that earnings be the net amount, after deductions for taxes, and social security. Overtime and cost of living allowance may be deducted where appropriate;
>
> (2) The earning potential, reasonable necessities, and borrowing capacity of both parents;
>
> (3) The needs of the child for whom support is sought;
>
> (4) The amount of public assistance which would be paid for the child under the full standard of need as established by the department;
>
> (5) The existence of other dependents of the obligor parent;
>
> (6) To foster incentives for both parents to work;

(7) To balance the standard of living of both parents and child and avoid placing any below the poverty level whenever possible;

(8) To avoid extreme and inequitable changes in either parent's income depending on custody; and

(9) If any obligee parent (with a school age child or children in school), who is mentally and physically able to work, remains at home and does not work, thirty (or less) hours of weekly earnings at the minimum wage may be imputed to that parent's income.

(b) The guidelines shall be:

(1) Applied statewide;

(2) To simplify the calculations as much as practicable;

(3) Applied to ensure, at a minimum, that the child for whom support is sought benefits from the income and resources of the obligor parent on an equitable basis in comparison with any other minor child of the obligor parent;

(4) Established by October 1, 1986; and

(5) Transmitted to the agency and all family court judges when available or updated, and shall be considered by the judges in the establishment of each child support order.

(c) The family court, in consultation with the agency, shall update the guidelines at least once every four years.

(d) The establishment of the guidelines or the adoption of any modifications made to the guidelines set forth in this section may constitute a change in circumstances sufficient to permit review of the support order. A material change of circumstances will be presumed if support as calculated pursuant to the guidelines is either ten per cent greater or less than the support amount in the outstanding support order. The most current guidelines shall be used to calculate the amount of the child support obligation.

(e) The responsible or custodial parent for which child support has previously been ordered shall have a right to petition the family court or the child support enforcement agency not more than once every three years for review and adjustment of the child support order without having to show a change in circumstances. The responsible or custodial parent shall not be precluded from petitioning the family court or the child support enforcement agency for review and adjustment of the child support order more than once in any three-year period if the second or subsequent request is supported by proof of a substantial or material change of circumstances.

HRS § 576D-7 (2006) (emphasis added). It is clear from the statutory language of HRS § 580-47(a) and HRS § 576D-7 that the guidelines were intended to establish the *amount* of child support rather than to establish the child's *eligibility* for such support. To the extent that the 2004 Guidelines purport to set an age limitation of 23 on the family court's authority to continue educational support for an adult child, they are invalid as they exceed the statutory mandate of HRS § 580-47(a) when they purport to limit eligibility for such support. Where there well may be valid policy reasons to support a statutory age limitation of 23 (or other age) for educational support, the imposition of eligibility requirements for educational support is a policy determination within the purview of the legislature, and HRS § 580-47(a) imposes no such age limitation. As Father candidly admitted, "the legislature cannot delegate the authority to establish or amend the eligibility criteria for child support that are set forth in HRS § 580-47(a) because it cannot delegate its legislative authority." *Hawaii Insurers Council v. Lingle*, 120 Hawai'i 51, 69–70, 201 P.3d 564 (2008).

The 2004 Guidelines thus do not support Father's argument for the age limitation of 23 for educational support.

D. *Legislative History of Amendments to HRS § 580-47(a)*

Father argues that, despite the broad language of HRS § 580-47(a), 1992 legislative amendments were intended to limit the broad language by facilitating termination of child support when an adult child is no longer

in school, quoting the legislative history of the 1992 amendments that "[c]urrent statutes do not clearly specify that child support payments terminate when the child becomes eighteen years old unless the child is enrolled in an acceptable form of secondary education." Conf. Comm. Rpt. No. 19, 1992 Senate Journal at 739. The 1992 amendments basically required that educational support may be suspended for an adult child unless the child provides proof of enrollment as a full-time student in school or has been accepted and plans to attend as a full-time student for the next semester. Father then argues that the 1992 amendments, combined with the subsequent *Nabarrete* decision, show a legislative intent to limit the broad language of HRS § 580–47(a) with respect to educational support for an adult child.

 We do not find Father's argument persuasive. We previously discussed the infirmities of *Nabarrete* herein. With respect to the statutory amendments, where the statutory language is plain and unambiguous, we give effect to the statute's plain and obvious meaning. *State v. Silver*, 125 Hawai'i at 4, 249 P.3d at 1144. In our view, the 1992 statutory amendments to HRS § 580–47(a) do not in any respect limit the family court's broad authority to provide educational support for an adult child.

E. *The Legislature's Failure to Act in Response to the ICA Case Law Shows That the Legislature Tacitly Approved the ICA Decisions, Giving Them the Effect of Legislation.*

Father cites two cases in support of his argument that the legislature's failure to act in response to the ICA decisions in *Nabarrete* and *Mack* shows that the legislature tacitly approved the ICA decisions, giving them the effect of legislation. Both of these cases are easily distinguishable.

In *State v. Dannenberg*, 74 Haw. 75, 837 P.2d 776 (1992), we addressed the statutory language of HRS § 712–1200(4), a prostitution statute which contains its own mandatory sentencing scheme. This mandatory sentencing scheme provided that "notwithstanding any other law to the contrary," for any subsequent offense, "a fine of $500 and

term of imprisonment of thirty days, *without possibility of suspension of sentence or probation.*" *Id.* at 80, 837 P.2d at 778 (emphasis in original). In *State v. Rice*, 66 Haw. 101, 657 P.2d 1026 (1983), we interpreted "[n]otwithstanding any other law to the contrary" in HRS § 712–1200 as language taking away the trial court's power to grant deferred acceptance of guilty (DAG) pleas. *Id.* at 102, 657 P.2d at 1026. In *Dannenberg*, we found that while defendant's argument that the mandatory sentencing provisions of HRS § 712–1200 only apply where the defendant is actually "convicted" and that a DAG plea is not a conviction is well taken, to permit a trial court to defer the entry of a plea in order to avoid a conviction permits the court to avoid the sentencing scheme created by the legislature specifically for prostitution cases would be repugnant to legislative intent. *Dannenberg*, 74 Haw. at 80, 837 P.2d at 778–79. It was in this context that the *Dannenberg* court stated that the legislature's failure to react in response to its holding in *Rice* concerning statutory interpretation of HRS § 712–1200(4) must be considered to have the tacit approval of the legislature.

In the second case cited by Father, *State v. Hussein*, 122 Hawai'i 495, 229 P.3d 313 (2010), we discussed multiple issues in the sentencing of criminal defendants, and ultimately imposed a new requirement that sentencing courts must state the reasons for imposing consecutive sentences. The dissent in *Hussein* objected to the imposition of the new requirement on several grounds, one of which was that the sentencing judge would be placed at risk of violating HRS § 806–73 (Supp.2008), which states that "[a]ll adult probation records shall be confidential and shall not be deemed to be public records." *Id.* at 540, 229 P.3d at 358 (Moon, C.J., concurring in part, and dissenting in part, joined by Nakayama, J.). In responding to this specific point, the majority opinion noted that the dissent's concerns have already been considered by the legislature when it amended the statute in 2006 to "add persons and entities to the list of those who are allowed access to adult probation records." *Id.* at 529, 229 P.3d at 347. The majority opinion

further noted that the legislature's decision to increase the availability of PSI reports came long after this court had addressed the importance of stating sentencing reasons on the record in *Lau, Sinagoga, Leesary*, and related cases, and that the legislature had not responded to this court's admonition to sentencing courts to give reasons for their sentence by altering the language in either HRS § 806–73 or HRS § 706–604. *Id.* It was in this context that we stated that the legislature's failure to act in response to our statutory interpretation must be considered to have the tacit approval of the legislature. *Id.* (citing *Gray v. Admin. Dir.*, 84 Hawai'i 138, 143 n. 9, 931 P.2d 580, 585 n. 9 (1997) (quoting *Dannenberg*, 74 Haw. at 83, 837 P.2d at 780)).

The context of these two cases is far different from the ICA cases relied upon by Father. In fact, in neither the *Nabarrete* or *Mack* cases was the statutory language of HRS § 580–47(a) at issue in this case even discussed, much less constitute a statutory interpretation holding in either case. As discussed earlier herein, the *Nabarrete* citation is to a footnote in an ICA opinion which does not discuss HRS § 580–47(a) in either the text of the opinion or in the footnote. While *Mack* mentions HRS § 580–47(a), there is no discussion of the statutory language or the source of the age limitation of 23 for educational support.

In this context, we do not find Father's argument that "legislative inaction equals tacit approval" of the ICA decisions persuasive.

### F. The Family Court Did Not Abuse its Discretion in Ordering Educational Support to Daughter.

 Having established that HRS § 580–47(a) does not impose an age limit for educational support of an adult child, we now address the issue of whether the family court abused its discretion in this case when it ordered educational support for Daughter.

We hold that the family court did not abuse its discretion when it ordered educational support for Daughter. The family court's findings of fact include findings that Daughter has been blind since birth, completed high school at age 20, and is pursuing her college education, with the goal of being a flute teacher. The number of academic credits Daughter has taken and is taking is determined in collaboration with her school academic counselor. Daughter anticipates attending college for approximately two to four more years. The family court concluded that

> FOF No. 14. Based on [Daughter's] testimony that her curriculum is made in collaboration with her school academic counselor, and the mobility and other classes that [Daughter] takes, the Court finds that she is taking a reasonable and appropriate amount of credits to complete college in a timely fashion and is considered a full-time student in view of her sight disability.

As conceded by Father: "There is no suggestion herein that [Daughter] did not make a good faith effort to continue and complete her education to the best of her ability. It was not unreasonable under the circumstances that it was taking her longer to complete her education than would have been the case if she did not have a physical disability."

Based on these findings of fact, the family court did not abuse its discretion when it ordered educational support for Daughter.

### G. The ICA Erred in its Analysis and Remand Order.

Based upon our analysis discussed herein, we respectfully disagree with the ICA's analysis and remand order.

### IV. CONCLUSION

 Our holding that HRS § 580–47(a) does not impose an age limit for educational support of a child age 23 or older is not intended to be a "sea change" in the family court's consideration of requests for educational support of an adult child. The facts of this case present a unique and compelling basis for Daughter's continuing educational support beyond the age of 23, which the family court granted in the exercise of its discretion. It is anticipated that family courts will continue to consider all relevant factors when presented with a request for

educational support of an adult child, including but not limited to, the financial conditions of the parties, the anticipated length of the college or other educational program being pursued by the child as a full-time student, the ability of the child to contribute to his/her educational support by working part-time, obtaining scholarships, grants, student loans, and other financial assistance, and any other relevant circumstance, including but not limited to, a child's disability.

In light of our disagreement with that part of the Intermediate Court of Appeals' February 8, 2011 opinion concerning Appellee Father's obligation to provide educational support for Daughter, we vacate the Intermediate Court of Appeals' March 30, 2011 amended judgment on appeal, and affirm the family court's March 6, 2006 order reestablishing educational support for Daughter.