**Electronically Filed
Supreme Court
SCWC-15-0000529
18-JUN-2020
10:18 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

CHRISTIAN SAKAL, Petitioner/Plaintiff-Appellant,

vs.

ASSOCIATION OF APARTMENT OWNERS OF HAWAIIAN MONARCH; JONAH SCOTT KOGEN; and K&F 1984 LLC, Respondents/Defendants-Appellees.

SCWC-15-0000529

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000529; CAAP-15-0000573; CIV. NO. 14-1-1118)

JUNE 18, 2020

McKENNA, POLLACK, AND WILSON, JJ., WITH
RECKTENWALD, C.J., CONCURRING IN PART AND DISSENTING IN PART,
WITH WHOM NAKAYAMA, J., JOINS

OPINION OF THE COURT BY POLLACK, J.

This case arises from the nonjudicial foreclosure of the petitioner's apartment by the apartment owners' association based on unpaid assessments. After the sale was conducted, petitioner filed a complaint against the association and the

purchaser of the property for wrongful foreclosure, seeking relief that included damages and title to the property. The trial court dismissed the complaint, finding that it failed to state a claim upon which relief could be granted. Particularly, the court found that Hawai'i Revised Statutes (HRS) chapter 667, which governs foreclosures, contained a statutory bar that precluded the claims in the complaint. On appeal, the Intermediate Court of Appeals determined the statutory bar precluded petitioner's claim to title of the property against the purchaser but did not preclude petitioner's claim for damages against the association.

On certiorari, we consider whether the petitioner's claim for wrongful foreclosure, which is based on the association's lack of a valid power of sale, is statutorily limited or barred. Because we conclude that the petitioner's claim to title of the property is not limited by HRS chapter 667 and that its provisions do not bar a common law claim of wrongful foreclosure based on the lack of a power of sale, we hold that the complaint did state a claim against both the association and the purchaser of the apartment. Thus, the dismissal of the apartment owner's claims against both defendants for wrongful foreclosure and the Intermediate Court of Appeals' partial affirmance of the dismissal were erroneous.

## I. BACKGROUND

On March 28, 2006, Christian Sakal acquired an apartment in the Hawaiian Monarch Condominium Project (the property) as a tenant in severalty. On March 16, 2012, the Association of Apartment Owners of Hawaiian Monarch (AOAO Hawaiian Monarch or the AOAO) filed a Notice of Lien with the Office of Assistant Registrar of the Land Court against Sakal's property for unpaid assessments. The Notice stated that the lien claimed a pre-petition amount of $11,417.91 and a post-petition amount of $10,589.42.[1] Three months later, the AOAO filed a Notice of Default and Intention to Foreclose on Sakal's property in the Office of the Assistant Registrar of the State of Hawaiʻi (Assistant Registrar). Subsequently, AOAO Hawaiian Monarch filed a Notice of Association's Non-Judicial Foreclosure Under Power of Sale with the Assistant Registrar, which stated that a public auction would be held on December 3, 2012, pursuant to HRS §§ 514B-146 and 667-21 through 667-42.

Four days before the sale was scheduled to occur, Sakal filed a motion for preliminary injunction to stay the non-judicial foreclosure sale of the property in the Circuit Court of the First Circuit (circuit court). On December 3, 2012, the

_____

[1] Sakal filed a voluntary petition "under Chapter 13" in the United States Bankruptcy Court for the District of Hawaiʻi on April 27, 2011.

circuit court denied Sakal's motion for preliminary injunction, and AOAO Hawaiian Monarch held a public auction offering Sakal's property for sale.  A quitclaim deed was executed after the sale conveying Sakal's property to Jonah Scott Kogen for $50,500.  The deed was then recorded in the Office of the Assistant Registrar on January 16, 2013.

On May 5, 2014, Sakal filed a complaint against AOAO Hawaiian Monarch, Kogen, and K&F 1984 LLC in the circuit court.[2] The complaint alleged wrongful foreclosure against AOAO Hawaiian Monarch and common law trespass and quiet title claims against AOAO Hawaiian Monarch, Kogen, and K&F 1984 LLC.[3]  As to the wrongful foreclosure claim, Sakal alleged that the AOAO's bylaws did not include a power of sale that would allow it to nonjudicially foreclose on his property.  Additionally, Sakal contended that the AOAO was not granted a power of sale by statute.  Thus, Sakal claimed that AOAO Hawaiian Monarch's nonjudicial foreclosure was void and title should be restored to him.

Sakal further alleged that because neither AOAO

---

[2]     The Honorable Bert I. Ayabe presided.

[3]     The complaint alleged that K&F 1984 LLC was "a limited liability company registered in the State of Hawaii on December 31, 2012."  The circuit court entered default against K&F 1984 LLC for failing to plead or otherwise defend against the complaint.  Sakal dismissed all claims against K&F before appealing the circuit court's final judgment to the ICA.

Hawaiian Monarch nor Kogen had authority to enforce a nonjudicial foreclosure of an association lien, they were committing a continuing trespass on the property. Sakal requested that the circuit court declare the foreclosure auction and subsequent documents transferring title null and void and strike such documents, as well as "any and all other recorded documents relating to the wrongful foreclosure," from the records of the Office of the Assistant Registrar. Sakal also asked the circuit court to grant a preliminary and permanent injunction preventing AOAO Hawaiian Monarch and Kogen from enforcing the nonjudicial foreclosure and from trespassing on the property. Finally, Sakal prayed for actual and treble damages resulting from the foreclosure and his subsequent eviction from his property.

AOAO Hawaiian Monarch filed an answer asserting that Sakal's claim was barred by, inter alia, the applicable statute of limitations, laches, and improper service of process. Kogen did not file an answer to Sakal's complaint.

Kogen and AOAO Hawaiian Monarch filed separate motions to dismiss the complaint pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 12(b)(6).[4] In the memorandum supporting

---

[4] HRCP Rule 12(b)(6) (2000) provides as follows:

(continued . . .)

his motion, Kogen argued that the recordation of the quitclaim deed on January 16, 2013, precluded Sakal from challenging his right to title in the property.  Kogen asserted that the AOAO had, as required by HRS § 667-101(a), submitted an affidavit after the public sale of the property attesting that the sale had been lawfully conducted.[5]  Kogen maintained that HRS § 667-102(b) prevented Sakal from challenging his title to the

---

(. . . continued)

> (b) How presented.  Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:. . . .

> (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [HRCP] Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by [HRCP] Rule 56.

[5]     HRS § 667-101(a) (Supp. 2012) provides as follows:

> (a) After the public sale is held, the association shall sign an affidavit under penalty of perjury:

> (1) Stating that the power of sale foreclosure was made pursuant to the power of sale provision in the law or association documents;

> (2) Stating that the power of sale foreclosure was conducted as required by this part;

> (3) Summarizing what was done by the association;

> (4) Attaching a copy of the recorded notice of default and intention to foreclose; and

> (5) Attaching a copy of the last public notice of the public sale.

property once the deed and the affidavit were recorded.[6]  Thus,

Sakal's claims were barred, Kogen asserted, because the

complaint was filed after such documents were recorded.

        Additionally, Kogen argued that even if Sakal's claims

were not foreclosed by section 667-102, the claims were barred

by HRS § 667-60(c) (Supp. 2012), which provides that "[a]ny

action to void the transfer of title to the purchaser of

property pursuant to a foreclosure by power of sale" must be

filed "no later than sixty days following the recording of the

_____

[6]        HRS § 667-102(a)-(b) (Supp. 2012) provide the following in full:

(a) The affidavit required under section 667-101 and the
conveyance document shall be recorded no earlier than ten
days after the public sale is held but not later than
forty-five days after the public sale is held.  The
affidavit and the conveyance document may be recorded
separately and on different days.  After the recordation,
the association shall mail or deliver a recorded copy to
those persons entitled to receive the public notice of the
public sale under section 667-96(c).

(b) When both the affidavit and the conveyance document are
recorded:

        (1) The sale of the unit is considered completed;

        (2) All persons claiming by, through, or under the
        unit owner and all other persons having liens on the
        unit junior to the lien of the association shall be
        forever barred of and from any and all right, title,
        interest, and claims at law or in equity in and to
        the unit and every part of the unit, except as
        otherwise provided by law;

        (3) The lien of the association and all liens junior
        in priority to the lien of an association shall be
        automatically extinguished from the unit; and

        (4) The purchaser shall be entitled to immediate and
        exclusive possession of the unit.

affidavit required by section 667-32." Because Sakal failed to file his complaint within sixty days of the recording of the affidavit, Kogen contended that the claims were barred and the complaint should be dismissed. AOAO Hawaiian Monarch's memorandum submitted in support of its motion restated Kogen's memorandum verbatim.

In opposition, Sakal argued that HRS § 667-102(b)(2) provided an exception to the time bar for claims "as otherwise provided by law." The claim was not statutorily barred, Sakal maintained, because the foreclosure was unlawful from its inception due to the AOAO's lack of a power of sale. Sakal contended that since he was challenging the validity of the foreclosure sale based on the AOAO's lack of a power of sale, the statutory bar did not apply to his claim.

Sakal also argued that the time bar set forth in HRS § 667-60(c) did not apply because the AOAO's nonjudicial foreclosure of his property was governed by part VI of HRS chapter 667 and HRS § 667-60(c) was located within part IV, making it inapplicable to the AOAO's foreclosure.

The circuit court ruled that HRS § 667-102(b)(2), which Kogen argued prevented Sakal from challenging title to the property once the deed and the affidavit were recorded, was applicable to Sakal's claim because he was a unit owner. On this basis, the court granted Kogen's and the AOAO's motions and

dismissed Sakal's claims against both parties with prejudice.
The circuit court thereafter issued a final judgment.  Sakal
timely appealed.

## II.  ICA PROCEEDINGS

The Intermediate Court of Appeals (ICA) issued a
published opinion that partially affirmed and partially vacated
the circuit court's grant of the motions to dismiss.[7]  The ICA
held that Sakal's wrongful foreclosure claim was not barred by
HRS § 667-102 because the statute only bars claims "in and to
the unit" and not all claims arising out of wrongful and
unlawful nonjudicial foreclosures, such as claims for money
damages.  The ICA reasoned that the statute barred any claim to
title to the property by Sakal because he failed to challenge
the nonjudicial foreclosure of the property prior to the
recordation of the affidavit and the quitclaim deed.  However,
the ICA concluded that Sakal had stated a claim for wrongful
foreclosure on which damages could be granted because the AOAO
lacked a power of sale permitting it to foreclose on Sakal's
property.

Therefore, the ICA held that the circuit court erred
in dismissing Sakal's complaint in its entirety against AOAO

---

[7]    The opinion is published as Sakal v. Ass'n of Apartment Owners of Hawaiian Monarch, 143 Hawai'i 219, 426 P.3d 443 (App. 2018).

Hawaiian Monarch.  The ICA vacated the dismissal of Sakal's claims for damages against the AOAO arising out of the wrongful foreclosure and remanded the case to the circuit court.  The ICA affirmed the dismissal of all claims against Kogen and all claims "at law or in equity" against the AOAO "that seek right, title, or interest in and to the Property."

AOAO Hawaiian Monarch and Sakal both sought certiorari review of the ICA's judgment on appeal.[8]

---

[8]     The AOAO's application for writ of certiorari challenged the ICA's conclusion that the AOAO was not statutorily empowered to conduct a nonjudicial foreclosure on Sakal's property absent a power of sale provision in the AOAO's bylaws.  This court rejected the AOAO's application on December 28, 2018.  Sakal v. Ass'n of Apartment Owners of Hawaiian Monarch, No. SCWC-15-0000529, 2018 WL 6818901 (Haw. Dec. 28, 2018) (order rejecting application for writ of certiorari).  It is noted that on July 10, 2019, SB 551, SD1, HD2, CD1 of 2019, A Bill for an Act Relating to Condominiums, was enacted as Act 282 without the Governor's signature.  See Gov. Msg. No. 1402, (attaching Act 282 as pages 3-18 of the document), https://www.capitol.hawaii.gov/ session2019/bills/GM1402_.PDF.  Act 282 purported to retroactively grant apartment associations a statutory right to foreclose on members' apartments pursuant to part VI of HRS chapter 667.  Malabe v. Ass'n of Apartment Owners of Executive Centre, No. SCWC-17-0000145, at 44-45 (Haw. June 17, 2020).  In Malabe, we concluded that it was unnecessary to consider Act 282's effect on the Malabes' claim of wrongful foreclosure because the Act was only applicable to foreclosures conducted under part VI of HRS chapter 667 and the foreclosure in Malabe was conducted under part I of HRS chapter 667.  Id. at 33, 52-54.  We also observed that the United States District Court for the District of Hawai'i recently held Act 282 unconstitutional as violative of the Contracts Clause of Article I, § 10 of the United States Constitution.  Id. at 55-57 (citing Galima v. Ass'n of Apartment Owners of Palm Court, Civ. No. 16-00023 LEK-RT, 2020 WL 1822599 (D. Haw. Apr. 10, 2020)).
    In this case, neither the Notice of Association's Non-Judicial Foreclosure Under Power of Sale nor the Grantor's Affidavit of Non-Judicial Foreclosure Under Power of Sale are included in the record on appeal.  Sakal's complaint, however, indicates that the notice stated the AOAO intended to conduct a public foreclosure sale pursuant to HRS §§ 667-21 through 667-42, which corresponds to part II of HRS chapter 667.  Because the motions to dismiss were pursuant to HRCP Rule 12(b)(6), the allegations in the complaint are taken to be true.  Bank of America, N.A. v. Reyes-Toledo, 143 Hawai'i 249, 265, 428 P.3d 761, 777 (2018).  Thus, it is unnecessary for us to consider Act 282's effect on this litigation.  See Malabe, No. SCWC-17-

(continued . . .)

### III.    STANDARDS OF REVIEW

### A. Motion to Dismiss

This court reviews a trial court's ruling on a motion to dismiss de novo.  Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008).

### B. Statutory Interpretation

The interpretation of a statute is a question of law, which we review de novo.  State v. Carlton, 146 Hawai'i 16, 22, 455 P.3d 356, 362 (2019) (quoting State v. Lau, 78 Hawai'i 54, 58, 890 P.2d 291, 295 (1995)).

### IV. DISCUSSION

### A. The ICA Erred in Holding Sakal's Claim to the Property Was Barred by HRS § 667-102(b)(2).

Sakal argued before the ICA that his claim of wrongful foreclosure was not barred by HRS § 667-102(b)(2) because his claim was based on the AOAO's lack of a valid power of sale.  In response, the AOAO and Kogen contended that this statutory provision barred Sakal from seeking title to the property and damages once the affidavit and the deed were recorded.  In its opinion, the ICA concluded that Sakal was barred from any claim to the property itself because he failed to challenge the AOAO's

---

(. . . continued)

0000145, at 54 (declining to consider the constitutionality of Act 282 under the doctrine of constitutional avoidance).

foreclosure prior to the recordation of the AOAO's affidavit and the quitclaim deed, but that he could seek damages for wrongful foreclosure.  Before this court, Sakal argues that such an interpretation violates his constitutional right to procedural due process.  Thus, the ICA's construction of HRS § 667-102 is a critical and potentially dispositive issue in this case, and accordingly we begin our analysis with a review of the ICA's statutory interpretation.[9]

This court's construction of statutes is governed by well-settled principles.  State v. Carlton, 146 Hawai'i 16, 22, 455 P.3d 356, 362 (2019).  First, we examine the language of the statute itself.  Jaylo v. Jaylo, 125 Hawai'i 369, 373, 262 P.3d 245, 249 (2011) (quoting State v. Silver, 125 Hawai'i 1, 4, 249 P.3d 1141, 1144 (2011)).  Second, if the language is plain and

---

[9]  This court has consistently held that we have a duty to review de novo dispositive questions of law, such as the proper interpretation of a statute, even when the parties have not challenged or have stipulated to an erroneous interpretation.  See, e.g., State v. Medeiros, 146 Hawai'i 1, 3 n.2, 454 P.3d 1069, 1071 n.2 (2019) (noting that the State's failure to challenge the defendant's eligibility for a deferred acceptance of a no contest plea did not relieve this court of its obligation to determine whether the offense charged was nonprobationable, which was a dispositive question of law); Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 130 Hawai'i 36, 46, 305 P.3d 452, 462 (2013) ("We note, however, that the parties' stipulation as to a question of law is not binding on the court, and does not relieve us from the obligation to review questions of law de novo." (citing Chung Mi Ahn v. Liberty Mut. Fire Ins. Co., 126 Hawai'i 1, 10, 265 P.3d 470, 479 (2011))).  Thus, Sakal's focus on the constitutionality of the ICA's interpretation of HRS § 667-102 does not "relieve us from the obligation to review questions of law de novo."  LC v. MG & Child Support Enf't Agency, 143 Hawai'i 302, 320, 430 P.3d 400, 418 (2018) (Opinion of McKenna, J., writing for the court as to Part III.B) (citing Wong, 130 Hawai'i at 46, 305 P.3d at 462).

unambiguous, we must give effect to its plain and obvious meaning. Id. Third, implicit in statutory construction is our obligation to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language of the statute itself. Carlton, 146 Hawai'i at 22, 455 P.3d at 362 (citing State v. Choy Foo, 142 Hawai'i 65, 72, 414 P.3d 117, 124 (2018)).

Therefore, we first examine the language of the statute. HRS § 667-102 provides in relevant part as follows:

> (b) When both the affidavit and the conveyance document are recorded:
>
> . . . .
>
> (2) All persons claiming by, through, or under the unit owner and all other persons having liens on the unit junior to the lien of the association shall be forever barred of and from any and all right, title, interest, and claims at law or in equity in and to the unit and every part of the unit, except as otherwise provided by law[.]
>
> . . . .
>
> (c) The unit owner and any person claiming by, through, or under the unit owner and who is remaining in possession of the unit after the recordation of the affidavit and the conveyance document shall be considered a tenant at sufferance subject to eviction or ejectment.

(Emphases added.)

The ICA appears to have concluded that Sakal is "a person claiming by, through, or under the unit owner" to whom HRS § 667-102(b)(2) applies. However, by its plain meaning, the phrase "persons claiming by, through, or under the unit owner" does not include a unit owner. In specifying that it applies to

13

"persons claiming by, through, or under the unit owner," the provision contemplates at least one degree of separation between the identified party and the unit owner.  In other words, the statute on its face applies to extinguish only interests derived from the unit owner's interest in the property and not to any interest in the property retained by the unit owner.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty as to an expression used in a statute, the expression is ambiguous and the meaning of any ambiguous words may be sought by examining the context or resorting to extrinsic aids to determine legislative intent. Carlton, 146 Hawai'i at 22, 455 P.3d at 362 (citing Citizens Against Reckless Dev. v. Zoning Bd. of Appeals, 114 Hawai'i 184, 194, 159 P.3d 143, 153 (2007)).  Assuming there was some ambiguity as to whether the legislature intended "persons claiming by, through, or under the unit owner" to include the unit owner themselves, which there is not, the plain meaning of the text is confirmed by subsection (c) of the same statute, which provides that following recordation, "The unit owner and any person claiming by, through, or under the unit owner . . . shall be considered a tenant at sufferance subject to eviction or ejectment."  HRS § 667-102(c) (emphases added); see State v. Yokota, 143 Hawai'i 200, 205, 426 P.3d 424, 429 (2018) ("[L]aws in pari materia, or upon the same subject matter, shall be

construed with reference to each other." (quoting State v. Arceo, 84 Hawai'i 1, 19, 928 P.2d 843, 861 (1996))). By specifying that subsection (c) applies to both the "unit owner" and "any person claiming by, through, or under the unit owner," the legislature indicated that unit owners themselves are not "persons claiming by, through, or under the unit owner" within the meaning of the statute. See Yokota, 143 Hawai'i at 205, 426 P.3d at 429. To hold otherwise would render subsection (c)'s use of "unit owner" redundant, which is contrary to the "cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute." Coon v. City & Cty. of Honolulu, 98 Hawai'i 233, 259, 47 P.3d 348, 374 (2002) ("[N]o clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute." (quoting Franks v. City & Cty. of Honolulu, 74 Haw. 328, 339, 843 P.2d 668, 673 (1993))).

Additionally, it is fundamental that when the same phrase is used in different parts of the same statute, it is presumed to have the same intended meaning. See State v. Guyton, 135 Hawai'i 372, 380, 351 P.3d 1138, 1146 (2015) ("[W]here the meaning of a word is unclear in one part of a statute but clear in another part, the clear meaning can be

15

imparted to the unclear usage on the assumption that it means the same thing throughout the statute." (quoting Kam v. Noh, 70 Haw. 321, 325, 770 P.2d 414, 416 (1989))).  Because HRS § 667-102(c)'s reference to "any person claiming by, through, or under the unit owner" does not encompass unit owners themselves, HRS § 667-102(b)(2)'s bar to claims by "persons claiming by, through, or under the unit owner" does not bar claims by unit owners themselves.  Cf. Peak Capital Grp., LLC v. Perez, 141 Hawai'i 160, 174, 407 P.3d 116, 130 (2017) (stating that the circuit court's interlocutory foreclosure decree provided that "All Defendants . . . and all persons claiming by, through or under them . . . will be perpetually barred of and from any and all right . . . in the Property . . . upon closing of the sale herein authorized." (emphases added)); Fed. Home Loan Mortg. Corp. v. Transamerica Ins. Co., 89 Hawai'i 157, 165, 969 P.2d 1275, 1283 (1998) ("[T]he foreclosure order . . . expressly divested [defendants] 'and all persons claiming by, through or under them' of 'any and all right, title and interest in the said mortgaged property or any part thereof.'" (emphasis added)).

Inasmuch as Sakal's claim to title to the property arises directly from his status as a unit owner and not "by, through, or under" a unit owner, HRS § 667-102(b)(2) is inapplicable.  The ICA thus erred in determining that the

provision operated to bar Sakal from seeking recovery of the property.

**B. The Sixty-Day Time Limit of HRS § 667-60(c) Is Not Applicable to a Claim of Wrongful Foreclosure Based on the Lack of a Power of Sale.**

Before the circuit court, Kogen and the AOAO argued that Sakal's claim to recover title to the unit was barred because it was not brought within the sixty-day time limit established by HRS § 667-60(c).  The circuit court did not address this issue because it concluded that Sakal's claim was barred by HRS § 667-102(b)(2).  Although neither Kogen nor the AOAO have raised this argument before the ICA or this court, we address the application of this statute as it is likely to be reasserted on remand.  Nordic PCL Constr., Inc. v. LPIHGC, LLC, 136 Hawai'i 29, 44, 358 P.3d 1, 16 (2015) ("We now turn to issues that may arise during the evidentiary hearing on remand."); Sentinel Ins. Co. v. First Ins. Co. of Hawai'i, Ltd., 76 Hawai'i 277, 297, 875 P.2d 894, 914 (1994) (addressing issues the court expected would arise on remand).

As the ICA stated in this case, HRS chapter 667 "sets forth the procedures for foreclosure in Hawai'i and does not create a right to foreclose."  Within HRS chapter 667, section 667-60 establishes a scheme of sanctions and remedies applicable

17

when a party utilizing the foreclosure process fails to comply

with the statute's procedural requirements.[10]  The statute

---

[10]    HRS § 667-60 (Supp. 2012) provides the following in relevant part:

> (a) Any foreclosing mortgagee who engages in any of the following violations of this chapter shall have committed an unfair or deceptive act or practice under section 480-2:
>
>> (1) Failing to provide a borrower or mortgagor with, or failing to serve as required, the information required by section 667-22 or 667-55;
>>
>> (2) Failing to publish, or to post, information on the mortgaged property, as required by section 667-27 or 667-28;
>>
>> . . . .
>>
>> (5) Holding a public sale in violation of section 667-25;
>>
>> (6) Failing to include in a public notice of public sale the information required by section 667-27 or section 667-28;
>>
>> (7) Failing to provide the information required by section 667-41;
>>
>> . . . .
>
> (b) Notwithstanding subsection (a), the transfer of title to the purchaser of the property as a result of a foreclosure under this chapter shall only be subject to avoidance under section 480-12 for violations described in subsection (a)(1) to (9) if such violations are shown to be substantial and material; provided that a foreclosure sale shall not be subject to avoidance under section 480-12 for violation of section 667-56(5).
>
> (c) Any action to void the transfer of title to the purchaser of property pursuant to a foreclosure by power of sale under part II of this chapter shall be filed in the circuit court of the circuit within which the foreclosed property is situated no later than sixty days following the recording of the affidavit required by section 667-32.  If no such action is filed within the sixty-day period, then title to the property shall be deemed conclusively vested in the purchaser free and clear of any claim by the mortgagor or anyone claiming by, through, or under the mortgagor.

declares that certain enumerated violations are deemed to be unfair or deceptive acts or practices in violation of HRS § 480-2. See HRS § 667-60(a). As unfair or deceptive acts or practices, these violations may subject the foreclosing party to the penalties prescribed in Hawai'i's consumer protection statute, HRS chapter 480. See, e.g., HRS § 480-3.1 ("Any person, firm, company, association, or corporation violating any of the provisions of section 480-2 shall be fined a sum of not less than $500 nor more than $10,000 for each violation[.]").

The law goes on to clarify, however, that when the foreclosure sale has resulted in title passing to a third-party purchaser, only substantial and material violations of a subset of the identified violations will render the underlying transaction void, as is generally the case when HRS chapter 480 is violated in other contexts.[11] See HRS § 667-60(b). And HRS § 667-60(c) establishes a sixty-day time limit following the recordation of a power of sale affidavit during which such an action to void a transfer of title must be filed.

_____

[11] Under HRS § 480-12 (2008), "Any contract or agreement in violation of [HRS chapter 480] is void and is not enforceable at law or in equity." Thus, a transaction that includes an unfair or deceptive business practice is typically null and subject to rescission. See, e.g., 808 Dev., LLC v. Murakami, 111 Hawai'i 349, 356, 141 P.3d 996, 1003 (2006) ("[B]ased upon the plain language of the above statutes, a contractor who fails to [comply with the statutory requirements] may not enforce the contract against the owner and, consequently, is not entitled to a mechanic's lien upon the property.").

Significantly, HRS § 667-60(c) provides that the sixty-day time limit is applicable to "[a]ny action to void the transfer of title to the purchaser of property pursuant to a foreclosure by power of sale under part II."[12]  (Emphasis added.) By its plain language, the statutory time limit is only applicable when there is a valid power of sale; it does not apply when a foreclosing party is alleged to have conducted a foreclosure without a power of sale.  A claim based on a lack of power of sale is markedly different in nature and not dictated by the procedures or relief prescribed in HRS chapter 667. Rather, such a claim is governed by Hawai'i common law, under which an unauthorized nonjudicial foreclosure renders "the sale of the property [] invalid and voidable at the election of the mortgagor, who shall then regain title to and possession of the property."  Santiago v. Tanaka, 137 Hawai'i 137, 158, 366 P.3d 612, 633 (2016) (citing Ulrich v. Sec. Inv. Co., 35 Haw. 158, 168 (Haw. Terr. 1939)); see also Lee v. HSBC Bank USA, 121 Hawai'i 287, 296, 218 P.3d 775, 784 (2009) (holding a nonjudicial foreclosure sale void where the foreclosure sale was invalid under an applicable statute).  In this case Sakal's claim is not based on a violation of the foreclosure procedures set forth in

---

[12]    Part II of HRS chapter 667, entitled "Power of Sale Foreclosure Process," is comprised of HRS §§ 667-21 through 667-42.

HRS chapter 667. Rather, he claims wrongful foreclosure based on the absence of the AOAO's power of sale.[13] The wrongful foreclosure claim alleged by Sakal is therefore a common-law claim that is not subject to the HRS § 667-60(c) sixty-day time limit.[14]

---

[13] The "foreclosure by power of sale under part II" referred to in HRS § 667-60(c) means a nonjudicial foreclosure when the mortgage or other governing documents contain a power of sale provision. See Malabe, No. SCWC-17-0000145, at 46-47 (Haw. June 17, 2020). Under Act 282 of 2019, there are three means by which condominium associations may foreclose their liens: (1) by judicial action, (2) by nonjudicial foreclosure when the mortgage contains a nonjudicial foreclosure or power of sale provision, or (3) by power of sale foreclosure, regardless of the presence or absence of power of sale language in an association's governing documents. Id. at 46. With respect to the third means, such "power of sale foreclosure" must be conducted under Part VI of HRS chapter 667. Id. As stated, it is unclear from the record which foreclosure procedures were utilized by the AOAO in this case. See supra note 8. By its express terms, the sixty-day time limit contained in HRS § 667-60(c) applies only when there has been a "transfer of title to the purchaser of property pursuant to a foreclosure by power of sale under part II" of HRS chapter 667. (Emphasis added.) On remand, if it is determined that the AOAO conducted the foreclosure pursuant to a part of HRS chapter 667 other than part II, such as part VI, HRS § 667-60(c)'s 60-day time limit would be inapplicable to this case on that basis as well.

The dissent maintains that it is unnecessary to consider HRS § 667-60(c)'s effect on this case because the AOAO possessed a power of sale to foreclose on Sakal's property, even though the AOAO's governing documents did not contain a power of sale provision. Dissent at 1-2. As discussed in Malabe, the AOAO was not permitted to foreclose on Sakal's property in the absence of a power of sale provision in either the association bylaws or another enforceable agreement. Malabe, No. SCWC-17-0000145, at 20.

[14] Although we conclude that Sakal is not statutorily precluded from seeking title to the property, we note that in cases of wrongful foreclosure, a court has the "power to fashion an equitable relief" because wrongful foreclosure is a proceeding that is equitable in nature. Santiago, 137 Hawaiʻi at 158, 366 P.3d at 633 (citing Beneficial Haw., Inc. v. Kida, 96 Hawaiʻi 289, 312, 30 P.3d 895, 918 (2001)). This court has left open the question of whether, in light of the detailed statutory scheme governing the registration and issuance of certificates of title in the land court system, the equitable protections for good faith purchasers that we recognized in Santiago are available with respect to registered property. See Wells Fargo Bank, N.A. v. Omiya, 142 Hawaiʻi 439, 457 n.37, 420 P.3d 370, 388 n.37 (2018). In light of the fact that Kogen has not yet filed an answer in the proceedings, we do not consider whether Sakal's request for the equitable relief of restoring the property is subject to an equitable defense.

(continued . . .)

## V. CONCLUSION

Based on the foregoing, we vacate in part and affirm in part the ICA's judgment on appeal and remand the case to the circuit court for further proceedings consistent with this opinion.[15]

| | |
|---|---|
| Gary Victor Dubin, Frederick J. Arensmeyer for petitioner | /s/ Sabrina S. McKenna<br>/s/ Richard W. Pollack |
| Robert E. Chapman, Carlos D. Perez-Mesa, Jr., Mary Martin for respondent Association of Apartment Owners of Hawaiian Monarch | /s/ Michael D. Wilson |





Jeffrey P. Miller
for respondent Jonah Scott Kogen

John A. Morris, M. Anne Anderson, Kapono F.H. Kiakona for amicus curiae
Community Associations Institute

---

(. . . continued)

[15]     Our disposition of this case renders it unnecessary to address Sakal's argument that the ICA's interpretation of HRS § 667-102 violates his constitutional due process rights.